The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Stegman presiding. Good morning, counsel. Our first case today. Excuse me. It's 424-0788. Jarrett versus Bond et al.  for counsel for the appellant. Please state your name. Good morning. My name is Brett Cole. Thank you. Counsel for the appellate. Please state your name. Good morning. My name is Zane Smith. Okay. And as I think, you know, counsel, each of you will be given 20 minutes to argue and then appellant will be given a five-minute rebuttal. With that, Mr. Cole, on behalf of the appellant, you may proceed. Thank you. May it please the court. Good morning. I'm here today to ask the court to reverse the trial court's order of contempt and order to produce a document privileged under the Illinois Medical Studies Act. The issues on appeal are first whether the... Go ahead. First, whether the September 21st peer review letter contains statements concerning the mechanisms of a peer review committee and whether the letter's contents should have been deemed privileged under the Illinois Medical Studies Act. And the answer is yes. Second, whether the events described in the September 21st peer review letter occurring in a different place and 10 years after the events at issue in this case were so remote that there was not sufficient potential that the letter would lead to relevant evidence. And the answer to that is yes. And third, whether the trial court's order of contempt should be vacated. And the answer is yes. I'll first go into the trial court's determination of the contents of the letter and whether those contents related to the mechanisms of a peer review under the Illinois Medical Studies Act. The manifest weight of the evidence suggests that the letter should be privileged. The Medical Studies Act standard privilege applies to material used by the peer review committee or other credentialing body of the hospital in the course of internal quality control. And the letter of September 21st, 2023 includes information regarding internal quality control. And I point to the Artisana case that says exempt material is limited to... The material exempt from the Medical Studies Act privilege is limited to ultimate decisions or actions by a hospital. Mere recommendations and internal conclusions of a peer review committee, medical executive committee are privileged under the Medical Studies Act. And that's where the substance of the September 21st, 2023 letter falls. Mr. Cole, may I ask, it sounds like the committee's work concluded with this letter, but there was at least one and perhaps two steps that would have to occur before Dr. Bond's privileges were actually revoked. Is that correct? Yes, that's correct. There was approval by the hospital board of directors that the medical executive committee had made a recommendation to the board. And the next step in that process would be a decision by the hospital's board of directors. Unless he requested a hearing, that would also be an interim step. Correct. And ultimately, the decision of the medical executive committee, the recommendation of the medical executive committee was not heeded. Dr. Bond remained privileged at those institutions at the conclusion of this and at the time of the court's order. So isn't what is discoverable under the Medical Studies Act, not the process, but the outcome? That's correct. And anything that shines light on the process is privileged under the act. And I would say that this letter is privileged in its entirety because on its face, it says this isn't the final step. This isn't the final determination. If you were to alternatively view this in a way that the committee's decision is the final step, which I would disagree with, even under those circumstances, the contents of this letter make reference to materials reviewed by the committee, occurrences that were brought under review by the committee. And those aspects of the process are privileged. I believe the letter ought to be privileged in its entirety because it includes nothing but internal quality control information. The Artisana case is really on point with that. This is not an ultimate decision or an ultimate conclusion. It's an internal recommendation. The hospital's board of directors had not weighed in on it, and ultimately, the recommendation was not heeded. The document establishes by its own content that it was a part of a peer review process, and it establishes by its own content that those are recommendations, not ultimate conclusions. And I think what Justice Doherty mentioned about the ultimate conclusion is brought forth in the Richter case. The ways and means are privileged. The ways and any peer review process are privileged, but the results, the ultimate results are not. And in this case, the ultimate results were inconsistent with this letter, and the letter was part of the middle, the ways and the means of the medical executive committee in reaching its recommendations. The Roche case is also instructive. It required that material must have been generated for the purpose of peer review, not for any other reason. This letter was generated for the purpose of peer review, not for any other reason. There's not anything. I don't believe there's any dispute about that. However, the Apolis brief makes some reference to, oh, there's more material to be All that's at issue in this appeal is the September 21st, 2016 letter, which makes reference to the process of peer review. My question is, where did the trial court go wrong in your judgment in its analysis in this case? I believe the trial court erred by making the determination that the September 21st, 2023 letter was a final determination, was an ultimate conclusion of a peer review process. I disagree that it was an ultimate conclusion of a peer review process, and the trial court had the information that was needed to know that this was not the ultimate conclusion of the peer review But the recommendation that was made in the September 21st, 2023 letter was not heeded by the hospital and was therefore not an ultimate conclusion. And in the Anderson case, even material produced outside of peer review, but ordered by peer review, may be privileged. Again, this letter is squarely within the parameters of an Illinois Medical Studies Act privilege. Partial plans are not ultimate decisions. Those are privileged. That was part of the Anderson holding as well. And in the Toth case, the appellate court found error from the trial court in ordering internal peer review documents to be disclosed. This is right along those lines as well. This is an internal peer review document. Now, there are some constraints that plaintiff brought up, and I believe were also referenced in the appellate's brief. Nielsen suggests that no privilege exists when material is generated in anticipation of peer review. That's not applicable here. The Chicago Trust case says documents at issue were not established. You said in anticipation of peer review. Did you mean in anticipation of litigation? Oh, perhaps. Oh, okay. In the Chicago Trust case, documents that were issued in that case were not established as being part of the peer review committee mechanism. They had just been stamped with the word confidential, and the appellate court said, you need more than that. You need more than a confidential stamp. And this is clear. In this case, this September 21st letter is the product of a peer review process and is not an ultimate conclusion. The Green case is instructive for us because there's, in that case, two different sides of the coin, so to speak. There's initially the material related to the nurse's suspension of privileges, and then later the material related to her termination, whether it was voluntary or not isn't really discussed. But the trial court had erred in ordering the disclosure of the termination form. But the court found it appropriate to order disclosure of the suspension form because it did not contain a reference to any mechanism of investigation, and it was the hospital's final determination on the issue. In this case, the September 21st, 2023 letter doesn't meet either of those criteria. It does contain reference to the mechanisms of peer review, and it was not the final determination. I'll move on to the remoteness portion of this. The letter and the suspension at issue are far too remote in time and circumstances from the events at issue in the case that was destined for trial to be discoverable. No aspect of the treatment at issue in this case occurred at a hospital. The events occurred entirely at Dr. Bond's office, and they occurred 10 years before the events concerning his privileges. Even if Dr. Bond had never had hospital privileges, he still would have been able to perform the procedures at issue in the case. And in the Green case, the appellate court determined that even 15 months later after the events was too remote. This document, in this case, the September 21st, 2023 peer review letter, is so remote in time from the occurrence at issue that if it had not been for juror misconduct resulting in a mistrial, the entire case would have been over before the suspension even occurred, before the letter was sent. There was nothing to talk about. All the evidence was in. Now, the plaintiff may refer to the Klain case, and plaintiff did refer to Klain in their brief. That was a hospital defendant with a credentialing issue in the case. And there's no hospital defendant in this case. Credentialing is not at issue in this case. In fact, nearly every case that involves the application or non-application of a medical studies act privilege that's cited in the briefs involves hospital defendants. And no hospital was named. None of this care occurred at the hospital. This information couldn't be used for collateral impeachment either, because collateral impeachment is not admissible. What would happen if this information was to be used to impeach Dr. Bond at trial is an entire sub-trial would be brought out for the jury to determine on the merits the comings and goings of Dr. Bond's credentialing issues. That's not at issue in this case. The issue is whether he complied with the standard of care or caused injury in treating Christine Jarrett now close to 15 years ago. Evidence of other bad outcomes is not admissible for impeachment of opinion testimony accordingly according to the Swift case. Now, I want to move on to the contempt order in this case and whether it should be vacated. And I believe that it should be. Regardless of the court's decision, I believe the court should reverse the order regarding discovery. But regardless of that decision, I believe the contempt order should be vacated because the nondisclosure of this letter was based on a good faith disagreement with the court's decision and not based on any other contempt for the court's authority. No case cited by either party suggests that the conduct of myself and my partner, Mr. Hughes, and our clients merits the sanctions that plaintiff proposes. And in plaintiff's response brief regarding the imposition of sanctions against the defendants, there are no cases cited. And there are no cases cited because there's no authority to justify that kind of sanction. This is a procedure concerning discovery disputes with the courts that has been followed appropriately in this case. And the framework is laid out and the case is cited in the briefs to say, this is what you do. And that's how this was conducted. The circumstances here were kind of unique because of the timing of the suspension. But the disclosure was made as timely as could be made with a good faith review of discovery to make sure that it was asked for. And the delay of the trial occurred kind of by happenstance. This issue would have been disputed if the case was earlier in trial. It had nothing to do with the timing of trial. Plaintiff claims she's at a great disadvantage because she hasn't seen the letter. And that's the nature of privilege disputes. Mr. Cole, the supplement to your client's deposition testimony said that his privileges had been suspended. So is that a result? That's not a result. And the trial court determined that the precautionary suspension was a part of an internal review. And that's what had been going on. There was a precautionary suspension placed on the privileges as of the 15th of September. And then there was a subsequent letter on the 21st. I believe that both the letters indicating precautionary suspension and the recommendation of the peer review committee that was subject to hearing and consideration by the hospital's board of directors were both distinguished. But even in a circumstance where the documented issue is not available to a party, it's not appropriate for the party to wildly speculate as to the contents of the document. And I think some of that occurred in plaintiff's brief. The court has seen the letters. The trial that's at issue. And my description of the contents of those letters to the trial court and to the appellate court in the brief are accurate. This letter was part of the peer review process. Plaintiff claims that it was not. And there's a number of cases cited to indicate that the letter, in plaintiff's brief, to indicate the letter was not part of the peer review process. Those include Grosslich v. Edward Hospital, Chicago Trust Company, Pietro v. Marriott Senior Living Service, and Nielsen v. Swedish American Hospital. But none of those things that are cited in none of these cases concerning limitations on Medical Studies Act privilege or the situations that are referenced in plaintiff's brief apply here. The record is clear that the court believed the letter was a final determination of the peer review committee and peer review process, and the defendants disagreed. And that's what we're asking the court here today to review, is that determination by the trial court that this was a final determination. There's no evidence that this was from someone not authorized to investigate. There's no evidence that it was outside of the peer review process. There's no evidence it was created in the ordinary course of hospital business. There's no evidence it has a dual purpose for quality assurance and risk management. This is a product of peer review. Plaintiffs suggest that defendants didn't meet our burden, but we have asserted and demonstrated that the letter here was generated by the medical executive committee and used for peer review. And we did so by providing the letters to the trial court, and then we provided it to the appellate court as well. I have nothing further prepared. If there are questions from the panel, I can answer them in my remaining time, or I could defer. I appreciate your time today. Hey, thank you, counsel. You'll have an opportunity to address us again in the rebuttal. Mr. Smith, on behalf of the appellee, you may proceed, sir. Good morning. So, the issue, and the central issue to begin with, is that the appellees in this case are at a severe disadvantage without having the opportunity to look at or see the documents that are in question. Counsel, isn't that what in-camera review means? In-camera review does mean that. However, in this case, in order to respond, in order to counter the defendant's conclusionary statements that this is privileged, that this is part of the privilege, this is part of the committee, these are all issues that have to be taken at the defendant's word, at the appellant's word, without the benefit of any review of even the supporting documentation. Again, is that not what in-camera review means? It sounds like you're arguing against the court ever taking a document under review in-camera. No. Because all of the things that you say flow from that. I'm not arguing that. The process of an in-camera review was proper. This suggestion that the conclusion by the court is improper, was improper, is not supported by the defendant because we don't have the documents to determine whether or not there is, for example, we don't have the documents to determine whether or not the committee was made up of qualified individuals that would be subject to the privilege. We don't have any of the documents regarding the committee that made this determination. The letter is the only thing that was submitted and on its face the letter says the doctor was suspended. That is a conclusion. That is a determination. And the defendants admitted that their document A-4 with their letter dated April 3rd to our office says this letter is to supplement to my correspondence that doctors admitting privileges were suspended. Well then what's the purpose of sending it then to the board? And what's the purpose of allowing a hearing? So the purpose of sending it to the board is the issue that is to be determined as to whether or not that is a conclusion of the committee or not. That determination as to whether or not that was a conclusion of the committee carries the day as to whether or not it was privileged. Why isn't it a conclusion of the board rather than the committee whether he'll be suspended? Because the board is a simply a further step as to what happens whether the doctor can appeal or request a re-hearing or reconsideration. It's analogous to if the court comes up with the jury verdict and then it goes to the appellate court. It is for purposes of privilege a final determination because the letter on itself on the face of the letter apparently says that he was suspended. That is a decision that was made. He can appeal it. He can say no no you're wrong. He can go to the board and give all the reasons why he shouldn't be suspended which apparently that's what he did. But for purposes of this panel determining as to whether or not this is privileged the first step that you have to take is whether or not it was an actual committee. I want to follow through on your contention that that is a result. All you get is the result and you've been given the result that he was suspended. Now you may disagree about whether it was final versus precautionary but all you get is the result. You don't get their analysis that led to the result. Well I don't disagree with your honor but the information that comes after the result may or may not be privileged but the trial court made the determination that this document was not privileged and needed to be disclosed and the trial court like the appellate court has the advantage of actually seeing the letter and the supporting documentation which we don't have. We don't have that advantage. So responding to your honor's question the issue of whether or not the supporting documents or the I'll call it the subsequent documentation after the suspension is privileged or not privileged that's an issue to be determined later. The issue for now is this letter and whether or not this letter is privileged. And if it's not a result you have to agree if it's not a result an action it's clearly not discoverable. Do you agree with that? If it was not a conclusion yes. Okay so if it is a conclusion what you get is what action was taken and you know that that's been provided to you. You don't get the rationale and the thinking that led to the conclusion. Okay but so you really you've got all you can get. I respectfully I disagree. The court has determined that the letter is not privileged. Why don't we get the letter? Right I understood but you're in this court now so convince us. Okay so if this letter is privileged then we should get it. If it isn't privileged we shouldn't. The determination by this court in reviewing that decision is a three-step process whether or not the committee is a proper committee to provide a basis for privilege. We don't know that. There's been no information nothing's been submitted to suggest as to whether or not the committee is a proper committee. The document that was provided does not have any additional information other than the letter. Defendants say that they have all this subsequent decisions and all processes. The trial court didn't have that information. They didn't have the ability to review that in its determination. Based on what the trial court has it's not privileged and and the defendants carry the burden your honors as to whether or not it is or is not confidential. The mere assertion simply stating it well obviously this is confidential because it's confidential is not proper. The defendants admit that Dr. Bond's privileges were suspended and the letter contains a conclusion that pursuant to the most recent case of Artisana would in fact support a determination because the letter itself is conclusive. Yes as defense has argued there's another step another process they can go to the board the doctor can do a bunch of things but that doesn't you have the conclusion if it's a conclusion you have it what you want is what's your thinking that led you to do that and that seems to be where the act comes into play but how does the trial court how is the trial court supposed to make that determination unless they receive all the documents they didn't get all the documentation they only got the two letters one they said was privileged and one they said well what would you suggest if it were judge smith how would you make that determination given that the legislature has determined that some of this under certain circumstances shall be privileged he made that review these same arguments that the defense is making today were all before the trial judge and he made the conclusion that one letter was privileged and one letter was not and the one letter that was not privileged should be disclosed this argument and if i could jump to the to the next issue this argument of well it's too remote to be relevant it has nothing to do with the present case this is a medical treatment that occurred 10 years ago the defense does not get to make that determination they don't get to be the judge to determine what's relevant or not not relevant i get the opportunity to argue that pardon me do we get to make that determination you do not the trial court makes the determination as to whether or not it's relevant for purposes of trial the trial court is the one that's in the position of determining based on the evidence that was presented and the arguments of the of the parties as to whether or not this information is relevant that is a separate and distinct issue as to whether or not it is confidential and the defendant is intermingling these two issues by arguing well it's too remote members of the panel council intermingling exactly what i thought you were doing he's made two different arguments he's made the argument that it's protected under the act and then he's made the argument that even if it were not protected it's so remote and it's a event it wouldn't have any relevance to your case arguable relevance so i i don't think he's the one that's intermingling those you don't think what i'm sorry i don't think your opponent opponent is the one that's intermingling those i think you're intermingling the two they're he's made them as separate arguments one is a medical studies act argument one is a discoverability or a normal discovery argument right and and and i'm addressing the issue of remoteness if i may which is on the discovery part of it that's correct which is on the discovery part of it what is our standard of review counsel um well as to whether or not it is privileged i'm sorry hold on as to whether or not it is a uh hold on it's a it's a two-part uh determination my apologies whether the act's privilege applies is a question of law that is reviewed de novo however the question of whether specific materials are part of an internal quality control is a fact question in which defendants bear the burden so it's a two-part review by this court the determination of whether the act privilege applies is a question of law and whether or not the internal or the specific materials that qualify or go along with the that's a fact question um so if we were to agree with your argument on appeal that the trial court was correct uh in holding that the act didn't apply what is your position regarding the contempt that the court found the opponents and well what do you advise this court to do on that i'm sorry to interrupt what should this court do with regard to the contempt finding yes i i think you should support the motion for contempt it is not a violation and it is an accepted practice for a friendly contempt that's not our position the friendly contempt was done he waited six months after he became aware of this suspension by dr bond and he waited until two months before we were scheduled to retry the case before bringing this to the attention of counsel and the court that is a basis of finding him in contempt for not providing the information sooner and that is a base contempt of which order the contempt of the order of failing to provide which order not turning over the document that's that's the action what is the order that he violated the the order that he violated was not turning over the document telling me what he failed to do what order required him to turn over the documents that's what contempt means every lawyer has a uh an obligation to timely update and provide information that's relevant and he knew this documentation counsel for the defense counsel he was not held in contempt for doing this late he was held in contempt for failing to follow judge i really's order that it be turned over so you're asking that we uh sustain contempt on a basis that really wasn't the basis that the trial court had you the your honor is correct the the contempt was failing to turn over the document however we believe that the fail to turn over the document also included an intentional delay in interference with the trial court does the trial court believe that well we never got a chance to present it because if the if he doesn't present the issue strike that if he if the court determines it was not privileged not again my mistake if the court determines that it was privileged then it's moot the document doesn't have to be turned over did you ever argue to the trial court that it should find uh defendant in contempt for failing to disclose the existence of the suspension sooner than he did we did not yeah we did not make that argument however pardon me is that your argument on appeal to this court on that particular issue or the whole the whole are you asking what you just said that you didn't argue to the trial court are you arguing it i am because i think this court can make it to recognize that the defendant's acts awaiting six months uh when they had knowledge of it and two months before the trial i'm asking this court for sanctions absolutely as part of well now you're blending sanctions and contempt well i'm asking for sanctions as part of the review by this court for the delay and it's in my brief and we asked for it it's not something that's surprising or or uh i'm bringing it up for the first time today that's part of our brief and our request well we're a court of review council and it's it's odd when you're seeking relief based on a particular basis that it sounds to me like you never raised with the trial court again i'm not sure i could raise it if the court had made the determination on the issue or question of confidentiality because if the court found that this document was in fact confidential then it's not interfering it has nothing to do with the trial because i won't be able to raise it at the next trial okay but he did he did find it should be disclosed why didn't you raise it then well we i i didn't in right right you're right and you're aware that you're not supposed to raise a new issue on appeal that you didn't raise in the trial court well we raised the issue of the failure to disclose you're right we did not raise the specific issue in terms of the timing of the knowledge at six months and and uh six months of knowledge in two months before the trial court's absolutely correct we did not raise that with the trial court at the time um i think i've argued this but i want to make sure that i have addressed the issue of whether or not the letter will be determined on the question of relevancy and whether or not it'd be a missile at the time of trial if the if the court supports the trial court's conclusion that this is not privileged and should be disclosed in its entirety the court will then make a determination what if any other supporting documents or conclusory documents or anything else that would be part of the privileged review that will be determined by the trial court as well that is a completely separate issue as to whether or not a jury in the second trial will ever hear this will ever know about it because the issue of relevancy will be determined through either a motion to eliminate or a pre-trial discussion between the parties in the court so again i think this panel should disregard any arguments of remoteness or issues of whether or not judge whether or not dr bond's actions could or might be uh remote remotely connected to the allegations in our case uh there from the little bit that we understand that this is this may be the result of repeated acts on the part of dr bond it was the result of something that occurred in his office which would necessarily refer to office procedures which is an issue in our case and it may have to do with his actor acts as that applies to one patient or different patient the issue in the underlying case involves his failure to not only provide medical care but in terms of his administration of his office and the notes and the records that he kept in terms of his treatment of my client all of those questions may be impacted by the reason and the determination of the suspension of dr bond in addition i asked dr bond during the discovery deposition if his privileges had ever been suspended he said no now that his privileges have it was true at the time though right yes and if i may it was true at the time but dr bond has an obligation a continuing obligation to update any and all discovery when he knew about the fact that he had been suspended whether it was a day a month or a year he had an obligation to disclose it and violated that obligation that is an issue that is in this case and is part and partial of the question of this letter thank you very much thank you chancellor mr uh call on behalf of the felon you may make some other arguments if you wish thank you i i want to first address the relevance uh question that mr smith was talking about uh the scenarios that he brought up of of things that could be discussed at trial none of those things uh would be admissible they're all collateral issues not not related to care and treatment at issue in this case and if he testifies as an expert can he be impeached with his subsequent with his prior suspension potentially uh however not not concerning factual uh cases not do you have a pattern of this or a pattern of that and that's what mr smith was discussing uh his his testimony as an expert could be uh potentially impeached by uh prior discipline or a final determination by a hospital but i don't know that that would be applicable here and also the remoteness portion of this is is worthy of review and uh justice steigman asked mr smith uh what the standard of is for that question and the answer to that question is it's an abuse of discretion standard it's set forth in the green case when in green the appellate court found it was an abuse of discretion for the trial court to order disclosure of a document that was too remote to lead to relevant evidence the judge i really pass on the question of remoteness how can we say he abused his discretion if he never got to that issue well it appears he did get to the issue and found that it it was sufficiently remote to be discoverable i judge i really was kind of between a rock and a hard place as far as the timing of this is concerned and i'm sympathetic to him and i but he made a mistake i believe what his intention was was to address privilege and if it's not privileged it's discoverable discoverable and if it is privileged it's not and then wait later to address relevance and that that i understand that that strategy but it's it's not what's appropriate under illinois law and the green case indicates if you got something that's so remote as to not lead to relevant evidence it's okay to not order its disclosure in fact it's an abuse of discretion to order its disclosure and that that is what occurred that's that's the error that uh we're climbing uh i want to talk a little bit about the timing too plaintiff made no interrogatories or requests for production concerning hospital admission privileges it's not strange that that didn't happen because no care in this case occurred at a hospital uh however at dr bond's discovery deposition there was an isolated question and answer did have your hospital admission privileges ever been suspended or revoked and the answer was no so at the time of the suspension in september of 2023 i engaged in a review of the it's not likely to be relevant it doesn't need to be disclosed and then down the road preparing for trial i'm going through dr bond's deposition testimony and i come across this this question and this answer this is likely not information in the record though council uh it i believe it was argued to the to the trial court it's in the record uh certainly in my brief uh and and that that was the basis for for making the disclosure at the time it was made was uh a review was conducted in good faith of the the discovery and it was determined oh this does need to be disclosed and it was disclosed and the the fact that it was disclosed months ahead of trial as opposed to uh not at all or uh on the eve of trial suggests good faith to my mind can i ask you though counsel when you make a medical studies act uh objection to production isn't it incumbent on you to provide the court with the policies and counsel with the policies that govern the decision making that show us who the committees are well the trial court just submitting the document the trial court in this case was satisfied that that prong of this had been met by the content of the letters because the trial court determined that the base was was what's the basis for that if we don't have the policies i i don't have access to the policies as a defendant i'm not a hospital defendant and i i gave the the court what i could hey thank you counsel your time is up the court will think of this matter under advisement issue a written decision in due course